Case number 24-3211, EOG Resources Inc v. Lucky Land Management LLC. Argument not to exceed 15 minutes per side. Mr. Corcoran, you may proceed for the appellant. Good morning, may it please the court. My name is Dan Corcoran and I represent the appellant, Lucky Land Management. Mr. Brian Lucky is here for Lucky Land Management this morning and I've reserved five minutes of time for rebuttal. The issue in this case is whether EOG, which is the oil company, whether they are entitled to use up to 45 acres of my client's property to build two horizontal well pads that will produce oil and gas not just from the 313 acres that my client owns, but from 4,000 acres spanning a six-mile area in Sharon and several other townships in Noble County, Ohio. And furthermore, the question is whether EOG is so clearly entitled to this, to do this, that it should be granted an extraordinary remedy to commence construction immediately via a preliminary injunction instead of waiting until the conclusion of the case. Can I ask you a question about the 4,000 acres? I'm a little confused from the record. Is there, is there a unit here? Has this been unitized? Yes, your honor. There is a unit here and I believe we had a map showing the unit in our brief where that's located. It has been unitized when they're putting together that many, that much acreage. There's a lot of different parcels that are involved. So they are, are they, are they the unit operator? I believe that they are the unit operator. Okay. Do you agree that the law is possibly different, I suppose, on whether you can drill, if you have surface rights, whether you can get adjoining properties, if it's a unit versus whether it's not a unit? No, I don't believe so, your honor. Unitization doesn't really have any impact on what they can do on the surface of the property. And I don't know whether they've applied for a unit order. I don't have an objection to them unitizing the property, frankly. They can go ahead and do it. I'm sure they will. And if they were to get a unit order from the state of Ohio, it wouldn't say anything about what they are or are not entitled to do on the surface of the property. And that's in the statute. Well, my understanding of oil and gas law, and it's been a long time since I've done any of this, but is that the general rule is that you can't go, you can't drill under adjoining property with, you have the surface rights here, mineral rights here. You cannot generally go to the adjoining property. But if it's a unit, if the whole thing is a unit, and I know Justice Judge Gorsuch has a Tenth Circuit opinion on this. I mean, the general law is the unit operator has more rights than what the normal mineral right holder would have on the surface. Is that my understanding is not correct? Well, if they're going to drill beneath a neighboring property, as they do plan to do in this case, they need to have a lease from the neighboring property owner or else they need to have a unitization order that would let them do that even on an unleased tract. But they have the mineral rights on the adjoining property, I assume? I believe that they do. Well, I mean, I would think they would have to. Yeah, otherwise it'd be a trespass if they didn't. Right. So I guess I go back to my understanding of the general law, and I don't think Ohio has any specific case on this. I know that the Snyder case is out there and there are some other cases, but they're not about this kind of subsurface issue, right? Generally, even if I have the rights on the adjoining property, I can't drill, I can't use a horizontal well unless the rights are specifically given to me in the deed or in the conveyance. But a unit seems to me to be different. The law of unitization says, look, for efficiency purposes, we have this entire area that we can drill. And as long as you're on somewhere on the surface, whatever the rules are, they're slightly different than an adjoining property. Now, I understand, my understanding may be wrong, but I don't know. You tell me. No, they can unitize the property. And we're not objecting to the right to unitize the property. What we're objecting to is them putting the pads on the surface of our property. We've suggested that they try to put it somewhere else. There's other locations that we believe would be feasible. We've asked them to look into that and they don't have interest in doing that. But yeah, unitization is a separate issue from whether or not they can use the surface of our property to construct their pads. It's not a right that was reserved in the deed, and it's not a that they would be given if they were to get a unitization order from the state of Ohio. And we do believe that this does come down to an issue of rights. That really should be the focus here. And the only rights they can have in the surface are whatever rights were reserved either expressly or impliedly in the reservation deeds. There were a series of reservation deeds from the 1950s and 60s. And initially, the trial court began with that analysis. I'm not going to go over the express rights analysis. The trial court found there was no express right. We agree with that conclusion. And then he said that they must show an implied right to use the surface. And he was going through that analysis, and it wasn't going that well because the judge had not been able to identify an implied right. But then suddenly, he seemed to change what he was talking about and changed the focus and said, well, it didn't really matter whether they had an express or implied right because he felt that they were going to show due regard for our surface rights, which we disagree with. But he said that because they weren't going to use too much acreage and they were willing to pay some money, that he didn't have to make a finding of rights at all, and they could go ahead and cut down the trees right now. So the court pivoted away and abandoned its rights analysis. And we think that this is clearly an error. There's not a case in Ohio or anywhere else, as far as I'm aware, that says that a mineral owner has the right to use the surface to produce from neighboring land simply because he's willing to show due regard for the surface owner. This is something that's unprecedented. It's never happened in Ohio before. What do you do with Schneider? Yeah. EOG likes to talk about Schneider. They cite to it repeatedly and they urge the court to refer on the basis of Schneider. That case, it's an Ohio Supreme Court case, but it doesn't really deal with the issue that we're talking about here. Schneider had to do with whether or not the mineral owner had the right to conduct strip mining on the surface of the property. Yeah, they own the underlying coal. They wanted to conduct strip mining and the Supreme Court said that they And they said they just have to be reasonable, right? And they had to be reasonable, right. So why wouldn't that apply here by analogy? I get that they're different, but why not by analogy apply it here? Well, two reasons, Your Honor. There's nothing in Schneider that said or even suggested that they would have the right to use the surface of the property to conduct mining operations on neighboring properties. That's the first thing. And the second thing that they said in the Schneider case is that the strip mining that they wanted to do in that case, it was a technique of mining that was well known in the county at the time that the coal was separated from the surface. Compare that to the situation here. We're talking about horizontal wells, you know, going down and then out three miles in each direction. That would have been completely unheard of in the 1950s and 1960s. That technology didn't exist. Nobody would have even conceived that that was possible. If you owned both the surface and the underlying subsurface rights, could you have done horizontal? In other words, if you owned both, could you do horizontal on your own land? You'd still have to put together a unit and either get a lease from the neighboring landowner or ODNR order. But if you own the surface and you own the underlying minerals, yes. But they don't own the surface. We own the surface. And that's the problem here. We own the surface and they also don't have the right. They could have reserved that right. And some deeds did reserve the right to conduct drilling or mining operations on neighboring properties. I think this court had a case to that effect. But that wasn't in the language of these severance deeds. So there's no right. There has to be an express or implied right. What if they did have an express or implied right? If they had an express or implied right to use the surface? No, drill oil from the neighboring lands. Yeah, if they have the express or implied right, then they would have the right to do it. They would have the right to do it. That would still have to show due regard for our existing use of the surface. So there would still be questions about, like, where's the well pad going? And we're already using that part. There was evidence presented to the trial court about the fact that my client has spent $590,000 improving this property, turning it into a hunting property, including $300,000 that he used to clear about 60 acres to put food plots. Well, they're wanting to put the wells in the middle of some of our food plots. So that would be something that would still have to be addressed. But they would have the right to put it somewhere on the property. There's a balancing of interests that would come into play at that point. But our point is that the question of rights is a threshold issue. And you don't get to a balancing of interests unless they have an express or implied right in the first place. So the trial court was focusing on... Your time is up. Hold on. Do you want to save your time for rebuttal? Yes, I do. Thank you. Okay. Thank you. Mr. Baranzi. Thank you, Your Honor. Good morning. May it please the court. My name is Chris Baranzi. My colleague, Bob Carl, and I are here on behalf of Appali EOG Resources. I'd like to address just a couple of points right up front. First, there's a variety of facts in this case that are undisputed or unrebutted that make all the difference in helping distinguish this case from the variety of other cases that Lucky Land has cited in its briefing. And then the second point I want to address is there are two cases relied upon by the motion panel when it stayed the preliminary injunction that are highly distinguishable from this case. And the motion panel appeared not to have appreciated the important distinguishing features. With respect to the key findings... What is the answer to my question about a unit? Is there a unit here or not? I don't know if units have been formed yet. There will eventually be four units. They will either be voluntarily formed or unitized under the statute. The answer is no. Are you a unit operator? So you're not a unit operator yet. EOG will be the unit operator. You will be, but are you not yet? I don't know if it has units formed yet or not. Do you agree that there's a difference generally in the law of how a unit operator is treated versus a normal surface operator on drilling to get minerals from adjoining land? A unit operator has the right to operate the entire unit and to drill through numerous properties to develop the entire unit. It has to have, as you pointed out, Your Honor, either lease rights or own the minerals to every property that it's going to produce. And it also has to have surface rights through some means. You're not a unit operator. You have the mineral rights. And my understanding of the general law, and this is the Crowder case from West Virginia, Williams and Myers treatise, all kinds of general law, right? Generally, you cannot use your surface rights on this piece of land and mineral rights, I'm sorry, your mineral rights on this piece of land to get at the mineral rights that you have on an adjoining piece of land. Is that not right? Your Honor, you certainly have to have lease rights or own the minerals on every piece of land you're going to produce. So regardless of where the surface location for the wells are going to be, you're going to have to have those subsurface rights. Yeah, I'm assuming you have the mineral rights on adjoining land, but you want to drill the wells on this piece of land to get at the minerals on this piece of land, right? That's not quite accurate. It's going to produce the minerals from the entire, including the entire lucky property. I understand that. My understanding of the general, what, say, Williams and Myers says is, look, the general rule is you can't do that. Unless you're drilling the wells on that property, you're not able to get at the adjoining stuff. Unless you're a unit operator, that makes things different. Is my understanding incorrect? I do think it's incorrect, Your Honor. You have to have surface rights. Is Crowder incorrect from West Virginia? Crowder's an implied rights case, and it distinguishes itself in its own holding. It says in an implied rights case, where there is absolutely no express reserved rights to the surface, the determination of what reasonable use is allowed is more exacting, is what they say. I agree with that, but do you have express rights to use the surface of this property to get at adjoining minerals? It's not express, right? We agree it's not express? Well, certainly the severance deeds don't say you can produce oil and gas from neighboring lands. But, Your Honor, yes, I agree. It doesn't say produce from neighboring lands. It doesn't say drill horizontal wells. It doesn't say install pipelines. It doesn't say roads. The severance deeds are one page apiece. They use broad categories of rights. They say that the operator, the owner of the oil and gas, has the right to remove oil and gas. I mean, the answer to his question is it's not express, right? Because it just says any and all oil, petroleum, and natural gas, together with the right to enter in and upon to prospect for drill, recover, and remove the oil, petroleum, and natural gas, right? Yeah, sure. That's the language of the deed. So it says nothing expressed that you can get at the neighboring lands? It does not expressly say anything about neighboring lands. So why wouldn't the, now I'm lost, why wouldn't the West Virginia case have bearing then? Isn't this an implied right? So in the West Virginia case, the situation was the oil and gas owner did not reserve any express rights to the surface. The oil and gas owner just said, I'm reserving the oil and gas, period. It didn't say anything about using the surface. This case is different because along with reserving the oil and gas, the original owner said, and I'm reserving the right to use the surface to drill, prospect for, remove, all of those things. It did not lay out the hundreds or thousands of specific rights or requirements that would be needed to actually remove or drill or that, you know, actually get out the oil and gas. Isn't that true generally that I get some implied right to, if I only have the mineral rights and I don't have any surface rights, I do have some implied right to use the surface. Otherwise, my mineral rights are useless, right? That's exactly right. Okay. But in the case where... But that doesn't necessarily extend to adjoining lands. That's what I'm saying. That's my understanding of the general law is you generally don't get adjoining lands. Your Honor, I... Putting aside whether you have a pool or a unit, that's different, it seems to me. But neither of you seems to agree with me, I guess. I don't know. Respectfully, I think it depends on the case. I think it depends on exactly what rights were reserved to use the surface. And that's the case in Snider. That's what Snider says. The Snider court, the Ohio Supreme Court, remanded to the trial court to find out what was reasonable. And it asked what was reasonable because that was the language in the Snider deed. It said that Snider reserved the minerals and the right to make a reasonable use of the surface. That case was a strip mining case. They were going to make very destructive use of the surface. The court did not rule out that that might be perfectly reasonable. Well, what about Lucky Land's distinction of Snider based upon the fact that the technology that they were using there was something that was well known at the time, whereas here, at least at the time that these deeds came into existence, this didn't exist. Not that it didn't exist, but it wasn't so widely known. Right, right. So there's a key fact here that's really important to this analysis, and that is that the use that EOG plans to make of the surface is actually less destructive, less impactful of the surface than what Lucky Land admits EOG has the right to do under the express language. And so in Snider... Well, what bearing does that have on whether or not this is something that is an implied right based upon what was going on? It's important, Your Honor, because Snider says that each party has to give due regard. Due regard is a concept of equitable fairness, a balancing of each party's interest. But we're not speaking to the due regard part of it. That's not what the distinction is about. The distinction is about whether or not this was something that was actually kind of an implied right that EOG had. So there's different kinds of implied rights. So there's rights implied at law to use surface of property if you only reserve the minerals and don't say anything about the surface. In that case, you still have the implied right to make reasonable use of the surface. But in this case, there's also rights that are implied from the broad language of the deed. You know, as I mentioned, the severance deeds say the rights are removed. It doesn't say how you can remove. It doesn't say you can remove with a 12-inch diameter pipeline with a specific wall thickness and tensile strength. It says that you can prospect for. But it doesn't say whether you can prospect for using new technologies or you don't actually have to drill multiple holes to find the oil and gas. So there are certain things that are implied by the broad categories of rights in the deed. And they're just not specified. There are no specific rights specified in the deed. It talks in categories. It talks about all rights necessary and proper. But why wouldn't all of that be limited to that parcel? Why would that extend to an adjoining piece of land? First of all, because the language... Everything you're saying could simply be limited to that parcel, right? It would be limited to that parcel if the language of the severance deed repelled use of property beyond that parcel. That's the quarto case. The quarto case says that when an oil and gas operator has reserved some surface use, as is the case here, it gets to use whatever rights are sort of reasonable within those reserved rights and is only limited by what those reserved rights repel. So it says, for example, if you have the right to remove using only pipelines, that would repel the use of trucks to remove the oil and gas. And here, you don't have anything that repels any sort of use of neighboring property, particularly in a situation where the use is less burdensome than the undisputed right to use the property. See, that's the key, Your Honor, is there's due regard. Each party has rights. We're both fighting for the same use of the surface, right? And so neither one can be foreclosed from using the surface. So what is an appropriate use by each party? Each party has to give due regard. And that is determined by this concept of what use are you going to make of it? And what use was expected? And is the use that you propose somehow beyond what would have been expected? That's the analysis. Can you speak to the irreparable injury that EOG would suffer without this? Sure. As you can imagine, planning to drill multiple wells from two different well pads are going to be about four or five acres apiece, require building of access roads, require environmental permitting, require... But all that stuff could just be delayed. Yeah, so it could be delayed. But there's competitors in the area. When you're trying to form large units, you have to acquire all the rights in those units. But even that can be economically compensated for. Let's say you lose access to all the minerals. There's still an economic compensation number that would make up for that, lost profits, whatever they are. The production from a well is speculative, Your Honor. EOG thinks it knows what's going to be produced for an oil and gas well. It has projections. It pays engineers well to tell them what it's going to be. Sure, but why does that make it irreparable? That makes it less... I mean, if it's speculative, it's less likely that there's damage versus more likely. There's case law, there's good authority in the state of Ohio that oil and gas, when it's in the ground, is part of the realty. And depriving EOG... I'm sorry to interrupt you. What is the irreparable harm? That's when I agree with Judge Davis. I don't see that Supreme Court Sixth Circuit precedent make clear, if you don't have irreparable harm, regardless of the merits, you don't get a PI. So the irreparable harm, and I will point out that this was a point that the district court did not rely on, right? This was not a part of why it granted the preliminary injunction. But don't you think that's a problem? That's a problem. Well, of course, there's four factors that are balanced and weighed. And the most important one is likelihood of success on the merits. And the court found that EOG did prove... But that's not right. We said, Judge Thapar wrote, that irreparable harm is... You have to have irreparable harm, right? That was DT versus Sumner County, whatever. And Winter from the Supreme Court says the same thing, basically. You have to have irreparable harm. So that's just error, right? It's the wrong standard. He didn't find there was no irreparable harm. He sort of discussed it and said, found this to be neutral. The court finds that EOG will face some harm without the issuance of an injunction. That harm is monetary or economic. Thus, EOG has a difficult time establishing that it would be irreparable harm without an injunction. That's certainly not a finding of irreparable harm. Would you agree with that? I would agree with that, Your Honor. Okay. So would you agree that if irreparable harm is needed, that was error to grant an injunction? Your Honor, I think that... You can argue for irreparable harm now, I suppose. You can argue that we affirm on another ground. But certainly, the district court didn't find irreparable harm. Yeah, we might. Certainly, we believe, EOG believes that there is irreparable harm. There's a need to move forward, to coordinate this production, to lease up properties. There's competition in the area and that kind of thing, right? There's harm by not being able to proceed with its plans. And there's a chance that when it's delayed, that its plans will never be able to be brought to fruition because of competition. Now, my understanding of the four factors that are needed for a preliminary injunction is that there is a balancing and that no one is dispositive. In this case, I'd also like to point out sort of the procedural posture of why we're here. This is an interlocutory order. And so the order was granted on a preliminary, interlocutory basis. The court did not consolidate its ruling with a trial on the merits. There is no merits decision. When this is remanded, whether the preliminary injunction is affirmed or reversed, we're going to go back and we're going to have more discovery. We're going to have a hearing on the merits. And the court will make a final decision then. And maybe we'll be back here one way or another. There's two keys to this case that separate it from the variety of out-of-state cases that Lucky has brought to this court's attention. And number one is, there is an express right by EOG to use the surface of this property. Now, it doesn't specifically say neighboring lands, just like it doesn't say thousands of other specific rights. But it has an express right to be on the surface. Secondly... Counsel, your red light's on. So if you want to wrap up, you can wrap up. You don't have to stop mid-sentence. Thank you. I was going to say, secondly, the key point is that the use that's proposed by EOG of the surface, even with the neighboring lands, is less burdensome than the right that Lucky Land concedes that EOG can make of the surface. And that's very important to the due regard analysis. We believe that Snyder controls, and this court should follow Snyder as the district court did. Thank you, Counsel.  I think you have five minutes. Is that accurate? Yes, that's right. Thank you. You may proceed. Okay, so I want to touch on the issue of express rights. The Sixth Circuit case that I had mentioned earlier, it was called Eclipse Resources v. Madzia. And even the district court had cited that in his opinion and noted that it was distinguishable. The language in the severance deed was different because the lessee in that case had rights to all of the oil and gas from any source and expressly used language that referred to other lands and other lands. We don't have that in the deeds that are at issue here. Counsel for EOG, they had argued that they had the express right. The district court didn't agree. On appeal now, they're trying to argue, and they cited to the Corto Mining case, that they should be able to do whatever they would like to do on the surface as long as the deed language doesn't clearly repel that. And I think that that's a misinterpretation of the Corto Mining case. What the court's talking about there is the type of implied rights that the mineral owner would have to the surface. But it doesn't say anything about, just like Snyder, it doesn't say anything about whether or not you can conduct activity on the surface of this property to engage in mining or drilling on a neighboring property. And also that rule, if you think about it, if you were allowed to do anything that wasn't prohibited, then why would anyone ever list any express rights in the deed in the first place? Let me ask you this because your friend makes mention of it being actually less invasive. If you contemplate, go back to Snyder, you contemplate surface mining that's very invasive and then technology improves it such that it's less invasive. You agree you could use the less invasive means, correct? You contemplate the more invasive, you use the less invasive, less destructive. Well, first of all, whether it's less invasive is something that we disagree about. But even if you assume that it is. Yeah, assume that it is. Even if you assume that it is, they don't have the right to do it. The right to do it is a threshold issue. And that's where I think the district court got it wrong. He was focusing on, well, it's not as bad as if they drilled vertical wells. They can drill the vertical wells. We don't dispute that. But it doesn't matter whether it's not as bad. It doesn't matter whether it uses less. Why not? Explain that. Yes, yes. They can't use, if it's 50 years later, they can't use advances in technology if those weren't contemplated at the time. Because they don't have the right to use the property for that purpose. When you're talking about property rights and you're talking about an issue of trespass, and if you don't have the right, then it's unauthorized. Any unauthorized intrusion on land is a trespass, even if it's very slight. And even if there's no damage, it's a trespass. That's why it doesn't matter whether it's not as bad. That's why I think the court got fixated on that issue and overlooked the threshold issue of rights. Because it's like, well, it's not as bad. They have to have the right to do both. You're saying the due regard analysis comes second. Yes, it comes second. The rights, you determine the rights first, then due regard. Yes. Because if they were drilling for minerals on the property underneath the surface, they would have some implied right or whatever rights the deed gives them to drill, to put vertical wells in. But those vertical wells, there would have to be due regard for the use of the property or whatever, right? But they would at least have the right to drill those vertical wells. Here they don't. They don't have the express right and they don't have the implied right. And I guess I should have talked more about irreparable harm. So yeah, I don't think there is irreparable harm for them in this case. The district court didn't find any. And we talked about this in our brief. We said that at most they had shown that maybe there was some seasonal variation in terms of how much it would cost to build a well pad in the winter versus the summer. But if you were to do it exactly a year later during the same season, I don't think there'd be any difference at all. The mineral rights are still down there. They're trapped in the shale. They're not going anywhere. It's not like if you can't drill the well right now, it'll be gone a year from now. Did they start clearing land or whatever in the interim time between the district court injunction and the stay from this court? Okay, so what happened was the district court granted the injunction. We filed a motion for stay with the district court. The district court didn't rule on it. They had a tree clearing deadline by, I think, at the end of March. They did clear trees on about a 35-acre area. The trees were cut down. We then filed our motion with this court asking for the stay. And well, I can't remember whether the district court denied it first. The district court denied it. This court granted it. So there was some tree clearing. But after this court issued the stay order, there hasn't been any further activity on the property. And I don't believe that they talked about the issue of reparable harm in their brief. Well, the district court didn't find any. So my time is up. For all those reasons, from the reasons in our brief, we would ask the court to reverse and vacate the district court's preliminary injunction order. Thank you. Thank you, counsel. The case will be submitted.